**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY, | |
| Plaintiff, | |
| v. | Case No. |
| REVIVE RX, LLC, | |
| Defendant. | |

**COMPLAINT**

Plaintiff Eli Lilly and Company ("Plaintiff" or "Lilly"), brings this action against Defendant Revive Rx, LLC ("Defendant" or "Revive"), and alleges the following:

### I.   NATURE OF THE ACTION

1. Lilly brings this action to stop Defendant from unlawfully manufacturing and selling unapproved new drugs. Texas state laws require drug manufacturers to demonstrate their drugs are safe and effective in order to obtain regulatory approval to market them. Defendant violates these laws by marketing and selling unapproved new drugs throughout Texas and most of the United States (according to its website, Defendant ships its unapproved drugs to Alaska, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming).

**A.   Texas Laws Against Unlawful and Unfair Competition**

2. Unfair competition under Texas law is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in

industrial or commercial matters.  *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).

3.      The tort of unfair competition requires a plaintiff to prove only: (1) an illegal action by the defendant that (2) interfered with the plaintiff's ability to conduct its business. *W. Rsrv. Medtec Servs., LLC v. Stryker Corp.*, No. 4:18-CV-2604, 2019 WL 13191641, at *8 (S.D. Tex. May 13, 2019) (citing *Taylor Pub. Co.*, 216 F.3d 465, 486 (5th Cir. 2000)).

**B.      Texas Laws Prohibiting the Sale of Unapproved Drugs**

4.      The Texas Food, Drug, and Cosmetic Act states that "A person shall not sell, deliver, offer for sale, hold for sale or give away any new drug unless: [] an application with respect thereto has been approved and the approval has not been withdrawn under Section 505 of the [Federal Drug and Cosmetic Act]" and "a copy of the letter of approval or approvability issued by the United States Food and Drug Administration is on file with the department if the product is manufactured in this state."  Tex. Health & Safety Code § 431.114(a).

5.      Defendant disregards these and other state laws respecting the distribution of unapproved drugs.  Rather than invest the time and resources necessary to research, develop, and test its products in order to ensure that they are safe and effective and to obtain regulatory approval to market them, Defendant is simply creating, marketing, selling, and distributing unapproved new drugs throughout Texas and most of the United States.

**C.      The Importance of Drug Approval and the Purpose of this Action**

6.      Defendant's business model is unlawful.  Defendant is engaged in unlawful and unfair business and trade practices because Defendant manufactures and dispenses drugs in violation of the Texas Food, Drug, and Cosmetic Act, which prohibits the sale of drugs not approved by FDA.

7.      Testing new drugs and obtaining the legally required regulatory approval to sell them is time-consuming and very costly.  Ignoring drug-approval requirements provides Defendant an unfair competitive advantage over law-abiding pharmaceutical manufacturers like Lilly.  Worse, it puts patients at risk by exposing them to drugs that have not been shown to be safe or effective.

8.      Federal and state law require approval for new drugs for good reason.  Drug approval is evidence-based, and it is essential to ensure the quality, safety, and effectiveness of new drugs.  When companies circumvent the drug-approval process, safety and efficacy are, at best, unknown.  The danger is not merely theoretical, as manufacturing and distribution of unapproved new drugs of unknown quality has endangered or adversely impacted public health. For example, in 2012, nearly 800 patients in 20 states were diagnosed with a fungal infection after receiving injections of an unapproved preservative-free methylprednisolone acetate drug manufactured in Massachusetts.  Of those 753 patients, the U.S. Centers for Disease Control and Prevention reported that 64 patients in nine states died, though other sources report the death toll as exceeding 100 victims.  Texas reported two cases of persons with fungal infections linked to steroid injections.  *See* Multistate Outbreak of Fungal Meningitis and Other Infections – Case Count, CDC (May 9, 2019), https://www.cdc.gov/hai/outbreaks/meningitis-map-large.html.  Other adverse events related to the sale of unapproved and unsafe drugs have occurred in the years following 2012.

9.      Lilly brings this action under Texas unfair competition laws to stop Defendant from unlawfully manufacturing, marketing, selling, and distributing unapproved new drugs.  Lilly seeks a declaration that Defendant's business practices violate Tex. Health & Safety Code § 431.114(a)(1) and constitute unfair competition by manufacturing, distributing, and selling unapproved new

3

drugs. Lilly also seeks an injunction prohibiting Defendant from committing such violations.

10.    Lilly also seeks attorney's fees and court costs. *See* Tex. Civ. Prac. & Rem. Code § 37.009.

## II.    THE PARTIES

11.    Lilly is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business in Indiana.

12.    Lilly markets and sells Mounajro®, which contains the active pharmaceutical ingredient tirzepatide. Mounjaro® is the only FDA-approved drug containing tirzepatide as its active pharmaceutical ingredient.

13.    Plaintiff sells Mounjaro® to medical facilities and customers across the United States, including in Texas.

14.    Plaintiff has invested significant time and resources to research, develop, manufacture, and test Mounjaro® in order to obtain regulatory approval from FDA to market it as a treatment for type 2 diabetes mellitus.

15.    Defendant is a limited liability company organized and existing under the laws of Texas, with its principal place of business at 3831 Golf Dr., Houston, TX 77018.

16.    Upon information and belief, all members of Defendant are citizens of Texas. The Texas Secretary of State's records list Aaron Schneider and Brigham Buhler as members of Defendant. According to an Accurint® background reports, Aaron Schneider resides in Harris County, Texas and Brigham Buhler resides in Travis County, Texas.

17.    Defendant markets itself as shipping products throughout most of the United States, including Texas. Defendant sells its unapproved drug products throughout most of the United States, including in this judicial District. The unapproved drug products Defendant manufactures

4

in this judicial District and offers for sale and ships throughout most of the United States include unapproved drugs, some of which, Defendant represents, contain tirzepatide.

### III.    JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The parties are citizens of different States (¶¶ 11–17, *supra*), and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

19.    This Court has personal jurisdiction over Defendant. Defendant manufactures its unapproved drugs in this District and ships them across most of the United States from this District. Plaintiff's claims arise out of or relate to Defendant's activities in this District.

20.    Venue in this District is proper under 28 U.S.C. § 1391(b).

### IV.    FACTUAL ALLEGATIONS

**A.    Plaintiff Sells the only Tirzepatide Drug Approved by FDA for Sale in the United States**

21.    Plaintiff sells Mounjaro® pursuant to New Drug Application #NDA 215866, which FDA approved on May 13, 2022, as a treatment for type 2 diabetes.

22.    Plaintiff is the only supplier of FDA-approved tirzepatide drugs in the United States.

**B.    Defendant's Activities Violate Texas Laws Against Selling Unapproved Drugs**

23.    Defendant's manufacturing, marketing, sale, and distribution of unapproved new drugs is unlawful.

24.    Under the Texas Food, Drug, and Cosmetic Act, "A person shall not sell, deliver, offer for sale, hold for sale or give away any new drug unless: an application with respect thereto has been approved and the approval has not been withdrawn under Section 505 of the [Federal Drug and Cosmetic Act] [.]" Tex. Health & Safety Code § 431.114(a)(1).

25.     Defendant does not have an approved New Drug Application or Abbreviated New Drug Application for any drug product purporting to contain tirzepatide.

26.     Defendant is violating the Texas Food, Drug, and Cosmetic Act, because (i) it is selling its unapproved tirzepatide drugs throughout most of the United States, including from Texas to customers in Texas; and (ii) it has not obtained the approval of any relevant regulatory authority to introduce into any state, or into interstate commerce generally, the unapproved drug purporting to contain tirzepatide that it manufactures, markets, sells, and distributes.

**C.     Defendant's business and trade practices jeopardize public health**

27.     Defendant's unfair competition jeopardizes public health.  FDA has stated that unapproved drugs pose a higher risk to patients than FDA-approved drugs because they have not undergone FDA premarket review for safety, effectiveness, and quality.  FDA's *Guidance for Industry, Prescription Requirement Under Section 503A of the Federal Food, Drug, and Cosmetic Act* at 4 (December 2016).   "Compounded drugs are not FDA-approved, and the agency does not verify the safety or effectiveness of compounded drugs."   FDA's *Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss* (May 31, 2023).  "Purchasing medicine online from unregulated, unlicensed sources can expose patients to potentially unsafe products that have not undergone appropriate evaluation or approval, or do not meet quality standards."  *Id.*

28.     Defendant sells its unapproved drugs, including its purported tirzepatide drug, without any assurances of the drug's identity, strength, quality and purity.

29.     Defendant manufactures its drugs under dangerous conditions, failing to follow the procedures necessary to prevent its drugs from being contaminated and subjecting patients to increased risk.  Last year FDA (1) made a repeat observation that there "is inadequate HEPA filter coverage or airflow over the area [in Defendant's facilities] to which sterile product is exposed";

and (2) observed that Defendant "use[d] poor aseptic techniques" and failed to adequately test and record certain testing results, among other things (Exhibit A, 2022 Form 483).  Additionally, in 2021, FDA observed inadequate "depyrogenation of product/equipment intended to be sterile" (Exhibit B, 2021 Form 483).

**D.    Plaintiff Has Been Injured by Defendant's Unlawful and Unfair Competition**

30.    Defendant's actions have injured Plaintiff.  Plaintiff is the only supplier in the United States of FDA-approved tirzepatide drugs.

31.    Defendant sells its unapproved drugs purporting to contain tirzepatide to customers in Texas and throughout most of the United States.  Some sales made by Defendant in each of the states in which it sells drugs purporting to contain tirzepatide would have been made by Plaintiff, but for Defendant's unlawful and unfair competition, and Plaintiff has suffered financial harm as a direct result of Defendant's unlawful and unfair competition.

32.    As a result of Defendant's unlawful and unfair competition as described above, Plaintiff has suffered financial harm.  Defendant's unlawful sales of its purported tirzepatide drug are also injuring the reputation of Plaintiff because of Defendant's business and trade practices that jeopardize public health.

## V.    CAUSES OF ACTION

### COUNT ONE

**(Texas Common Law Unfair Competition)**

33.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-32, above, as if fully stated herein.

34.    Unfair competition under Texas law is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in

industrial or commercial matters. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).

36. The tort of unfair competition requires a plaintiff to prove only: (1) an illegal act by the defendant that (2) interfered with the plaintiff's ability to conduct its business. *W. Rsrv. Medtex Servs., LLC v. Stryker Corp.*, No. 4:18-CV-2604, 2019 WL 13191641, at *8 (S.D. Tex. May 13, 2019) (citing *Taylor Pub. Co.*, 216 F.3d at 486).

36. Defendant has engaged in unfair competitive acts or practices by advertising, promoting, selling and offering for sale in Texas its unapproved new drugs in violation of the Texas Food, Drug, & Cosmetic Act.

37. The practices described herein also offend established public policy regarding the protection of consumers against companies, like Defendant, that engage in unfair methods of competition. Defendant's conduct has caused financial harm to Plaintiff.

38. Defendant's sale of unapproved new drugs in Texas is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or to competition.

39. Consumers in Texas who unwittingly purchased Defendant's illegal new drugs purporting to contain tirzepatide were deceived about the lawfulness of Defendant's product and deprived of the benefit of their bargain.

40. In addition injury in excess of $75,000, Plaintiff is entitled to declaratory and injunctive relief, the value of which exceeds $75,000, as well as reasonable attorney's fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor:

41.     A permanent injunction enjoining Defendant from continuing the unlawful and unfair business practices alleged in this complaint, which injunction has a value to Plaintiff in excess of $75,000;

42.     A judgment that Defendant engaged in common law unfair competition against Lilly by its violation of the Texas Food, Drug, & Cosmetic Act;

43.     Declaratory relief;

44.     Attorney's fees and costs incurred in this action; and

45.     Any further relief the Court may deem just and proper.

Dated: September 19, 2023

Respectfully submitted,

KING & SPALDING LLP
*s/ Nicole Bronnimann*
Nicole Bronnimann
*Attorney-in-charge*
Texas Bar No. 24109661
Southern District No. 3484321
King & Spalding LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002-5213
Tel.: (713) 751-3200
Fax: (713) 751-3290
nbronnimann@kslaw.com

*Of Counsel*:
Joseph N. Akrotirianakis
(*Pro Hac Vice* application forthcoming)
jakro@kslaw.com
Aaron Craig
(*Pro Hac Vice* application forthcoming)
*acraig@kslaw.com*
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

***Attorneys for Plaintiff***
***Eli Lilly and Company***