**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ELI LILLY AND COMPANY,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23−cv−03521** |
| | § | |
| **REVIVE RX, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT REVIVE RX, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

STATEMENT OF THE ISSUES ..................................................................................................2

STANDARD OF REVIEW ..........................................................................................................2

STATEMENT OF RELEVANT FACTS .....................................................................................2

SUMMARY OF ARGUMENT ....................................................................................................2

ARGUMENT..................................................................................................................................3

    I.    LILLY FAILS TO ALLEGE A VIOLATION OF STATE NEW DRUG STATUTES AND THUS LACKS ANY UNFAIR COMPETITION CLAIMS .................................... 3

    II.  EVEN IF LILLY HAD ALLEGED A VIOLATION OF STATE NEW DRUG STATUTES, IT WOULD NOT CONSTITUTE "UNFAIR COMPETITION" .............. 12

        A.  Alaska ........................................................................................................13

        B.  Colorado.....................................................................................................15

        C.  Connecticut ................................................................................................17

        D.  Hawaii .......................................................................................................18

        E.  North Carolina ...........................................................................................19

        F.  Tennessee...................................................................................................21

        G.  Washington ................................................................................................23

    III. CONNECTICUT's AND WASHINGTON's FDCA-STYLE EXCLUSIVITY PROVISIONS BAR LILLY'S CONNECTICUT AND WASHINGTON CLAIMS........24

CONCLUSION.............................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Alaska Tr., LLC v. Bachmeier,*
332 P.3d 1 (Alaska 2014)......................................................................................................7

*Allied Distributors, Inc. v. Latrobe Brewing Co.,*
847 F. Supp. 376 (E.D.N.C. 1993) .....................................................................................20

*Beeghly v. Mack,*
20 P.3d 610 (Colo. 2001)....................................................................................................15

*Bennett v. Visa USA Inc.,*
198 S.W.3d 747 (Tenn. Ct. App. 2006)..............................................................................21

*Bristol Tech., Inc. v. Microsoft Corp.,*
42 F. Supp. 2d 153 (D. Conn. 1998)...................................................................................17

*Buckman Co. v. Plaintiffs' Legal Comm.,*
531 U.S. 341 (2001)......................................................................................................10, 24

*Chambers v. Blickle Ford Sales, Inc.,*
313 F.2d 252 (2d Cir. 1963)..................................................................................................8

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC,*
845 F.3d 104 (4th Cir. 2016) ..............................................................................................20

*City Council of City of W. Haven v. Hall,*
429 A.2d 481 (Conn. 1980) ..................................................................................................7

*Connelly v. Hous. Auth. of City of New Haven,*
567 A.2d 1212 (Conn. 1990) ..............................................................................................17

*Cronin v. Howe,*
906 S.W.2d 910 (Tenn. 1995)...............................................................................................7

*Cross v. Ciox Health, LLC,*
438 F. Supp. 3d 572 (E.D.N.C. 2020) ................................................................................20

*Cunningham v. Cornell Univ.,*
604 U.S. 693 (2025)............................................................................................................15

*Curtis B. Pearson Music Co. v. Everitt,*
368 F. App'x 450 (4th Cir. 2010) .......................................................................................20

*Dalton v. Camp,*
548 S.E.2d 704 (N.C. 2001)................................................................................................20

*Davis Wright Tremaine LLP v. State, Dep't of Admin.*,
324 P.3d 293 (Alaska 2014)..............................................................................8

*DTH Media Corp. v. Folt*,
841 S.E.2d 251 (N.C. 2020)..............................................................................7

*Educ. ReEnvisioned BOCES v. Colorado Springs Sch. Dist. 11*,
524 P.3d 324 (Colo. App. 2022) .......................................................................8

*Falls v. Goins*,
673 S.W.3d 173 (Tenn. 2023).........................................................................7, 8

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)........................................................................................6, 8

*FuelCell Energy, Inc. v. Town of Groton*,
323 A.3d 268 (Conn. 2024) ..............................................................................5,

*Gilmore v. Pawn King, Inc.*,
98 A.3d 808 (Conn. 2014) .................................................................................7

*Gurrobat v. HTH Corp.*,
323 P.3d 792 (Haw. 2014) ...........................................................................17, 19

*Hallauer v. Spectrum Props., Inc.*,
18 P.3d 540 (Wash. 2001)..................................................................................7

*HAJMM Co. v. House of Raeford Farms, Inc.*,
403 S.E.2d 483 (N.C. 1991)..........................................................................20–21

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986).............................................................................23

*Hawaii Cmty. Fed. Credit Union v. Keka*,
11 P.3d 1 (Haw. 2000) .....................................................................................19

*Heejoon Chung v. U.S. Bank, N.A.*,
250 F. Supp. 3d 658 (D. Haw. 2017).................................................................19

*In re Det. of Williams*,
55 P.3d 597 (Wash. 2002)................................................................................23

*In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*,
779 F. Supp. 3d 624 (M.D.N.C. 2025) .............................................................15

*In re HIV Antitrust Litig.*, No. 19-CV-02573-EMC,
  2023 WL 3006572 (N.D. Cal. Apr. 18, 2023) ...................................................................15

*Jacobs v. Healey Ford-Subaru, Inc.*,
  652 A.2d 496 (Conn. 1995) ...........................................................................................17

*Landmark Inv. Grp., LLC v. Calco Const. & Dev. Co.*,
  60 A.3d 983 (Conn. 2013) .............................................................................................18

*Lawson v. Hawkins Cnty.*,
  661 S.W.3d 54 (Tenn. 2023) ...........................................................................................5

*Legacy Data Access, LLC v. MediQuant, Inc.*,
  2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) ................................................................20

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
  243 F.3d 789 (4th Cir. 2001) ........................................................................................20

*Marshall v. Miller*,
  276 S.E.2d 397 (N.C.1981) ...........................................................................................12

*Maziar v. Washington State Dep't of Corr.*,
  349 P.3d 826 (Wash. 2015) .............................................................................................7

*Mangone v. U-Haul Int'l, Inc.*,
  7 P.3d 189 (Colo. App. 1999) .......................................................................................16

*McLaughlin Ford, Inc. v. Ford Motor Co.*,
  473 A.2d 1185 (Conn. 1984) ........................................................................................17

*Med. Ctr. Pharmacy v. Mukasey*,
  536 F.3d 383 (5th Cir. 2008) .......................................................................................4–9

*Morita v. Gorak*,
  453 P.3d 205 (Haw. 2019) ...........................................................................................7, 8

*Noble v. Hooters of Greenville (NC), LLC*,
  681 S.E.2d 448 (N.C. App. 2009)..................................................................................20

*Nordin Const. Co. v. City of Nome*,
  489 P.2d 455 (Alaska 1971)............................................................................................8

*Nw. Mut. Ins. Co. v. Hylton*,
  172 S.E.2d 226 (N.C. 1970)............................................................................................8

v

*Odell v. Legal Bucks, LLC*,
665 S.E.2d 767 (N.C. App. 2008)............................................................................20

*Ohio Sec. Ins. Co. v. Axis Ins. Co.*,
413 P.3d 1028, 1030 (Wash. 2018)..........................................................................5

*Piedmont Pub. Co. v. City of Winston-Salem*,
434 S.E.2d 176 (N.C. 1993)....................................................................................5

*Pierce v. NovaStar Mortg., Inc.*,
238 F.R.D. 624 (W.D. Wash. 2006) .......................................................................23

*Prime Publishers, Inc. v. Am.-Republican, Inc.*,
160 F. Supp. 2d 266 (D. Conn. 2001)......................................................................18

*Ranney v. Whitewater Eng'g*,
122 P.3d 214 (Alaska 2005)...............................................................................13–14

*Richards v. Direct Energy Servs., LLC*,
915 F.3d 88 (2d Cir. 2019).....................................................................................18

*Ridge Cmty. Inv'rs, Inc. v. Berry*,
239 S.E.2d 566 (N.C. 1977)....................................................................................7

*Rivera v. Dep't of Admin., Div. of Motor Vehicles*,
564 P.3d 1040 (Alaska 2025)...................................................................................5

*Robbins v. People*,
107 P.3d 384 (Colo. 2005)......................................................................................7

*Sallee v. Barrett*,
171 S.W.3d 822 (Tenn. 2005)................................................................................23

*Schultea v. Wood*,
47 F.3d 1427 (5th Cir. 1995) .................................................................................15

*Sporty's Farm LLC v. Sportsman's Mkt., Inc.*,
202 F.3d 489 (2d Cir. 2000)...................................................................................18

*State v. Anderson*,
863 P.2d 1370 (Wash. 1993)....................................................................................8

*State v. Black*,
676 P.2d 963 (Wash. 1984).....................................................................................24

vi

*State v. Fyfe*,
370 P.3d 1092 (Alaska 2016) ..................................................................................13

*State v. O'Neill Investigations, Inc.*,
609 P.2d 520 (Alaska 1980) ....................................................................................14

*State v. Reis*,
165 P.3d 980 (Haw. 2007) ........................................................................................7

*State v. Schwab*,
693 P.2d 108 (Wash. 1985) .....................................................................................23

*Taggart v. Lorenzen*,
587 U.S. 554 (2019) ..................................................................................................4

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) .................................................................................................4,

*Tucker v. Sierra Builders*,
180 S.W.3d 109 (Tenn. Ct. App. 2005) ..................................................................21

*Underwater Const., Inc. v. Shirley*,
884 P.2d 150 (Alaska 1994) ......................................................................................7

*Walgreen Co. v. Charnes*,
819 P.2d 1039 (Colo. 1991) .......................................................................................7

*Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*,
33 S.W.3d 779 (Tenn. 2000) .....................................................................................8

*W. Distrib. Co. v. Diodosio*,
841 P.2d 1053 (Colo. 1992) ......................................................................................8

*Westgate Resorts, Ltd. v. Wesley Fin. Group, LLC*,
2023 WL 5062065 (M.D. Tenn. Aug. 8, 2023) ...................................................21–22

*WHIC LLC v. NextGen Lab'ys, Inc.*, No. CV 18-00261,
2019 WL 2717769 (D. Haw. June 28, 2019) ..........................................................19

*White v. Chase Bank USA, N.A.*, No. 5:16-CV-00176-BR,
2017 WL 1131898 (E.D.N.C. Mar. 24, 2017) ........................................................20

*Yoshimura v. Kaneshiro*,
481 P.3d 28 (Haw. 2021) ...........................................................................................5

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC,*
    134 F.4th 326 (5th Cir. 2025) ..................................................................................4–5, 11

**Statutes**

21 U.S.C. § 321.........................................................................................................................3,

21 U.S.C § 353a ................................................................................................................ *passim*

Alaska Stat. § 08.80.480 ...........................................................................................................6

Alaska Stat. § 45.50.471 ....................................................................................................13–14

Alaska Stat. § 45.50.545 .........................................................................................................12

Alaska Pharmacy Practice Act (Alaska Stat. §§ 08.80.003 et seq.)..........................................6

Colorado Pharmacy and Pharmaceutical Law (Colo. Rev. Stat. §§ 12-280-101 *et seq.)* ................6

Colo. Rev. Stat. § 6-1-105 .................................................................................................15–16

Colo. Rev. Stat. § 12-280-103 ...............................................................................................6, 9

3 CCR 719-1-21.00.30..............................................................................................................10

Connecticut Pharmacy Practice Act (Conn. Get. Stat. §§ 20-570)..........................................6

Conn. Gen. Stat. § 20-571.........................................................................................................6

Conn. Gen. Stat. § 20-633.......................................................................................................10

Conn. Gen. Stat. § 20-633b.....................................................................................................10

Conn. Gen. Stat. § 21a-70.......................................................................................................10

Conn. Gen. Stat. § 21a-99.................................................................................................3, 24–25

Conn. Gen. Stat. § 42-110b................................................................................................12, 16

Hawaii Pharmacists and Pharmacy Law (Haw. Rev. Stat. §§ 461-1 *et seq.*) .................................6

Haw. Rev. Stat. § 461-9 .............................................................................................................6

Haw. Rev. Stat. § 480-2 .....................................................................................................12, 18

North Carolina Pharmacy Practice Act (N.C. Gen. Stat. §§ 90-85.2 *et seq.*) ....................................6

N.C. Gen. Stat. § 90-85.3A...................................................................................................6, 10

N.C. Gen. Stat. § 106-140.1...............................................................................................10–11

N.C. Gen. Stat. § 106-135..................................................................................................20–21

Tenn. Code § 47-18-115 .........................................................................................................12

Tennessee Pharmacy Practice Act (Tenn. Code §§ 63-10-201 *et seq.*) ...........................................6

Tenn. Code § 63-10-204 .....................................................................................................6, 11

Washington Pharmacy Act (Wash. Rev. Code §§ 18.64.001)............................................................6

Wash. Rev. Code § 18.64.011.............................................................................................6, 10

Wash. Rev. Code § 19.86.920.......................................................................................12, 23–24

Wash. Rev. Code § 69.04.180...........................................................................................3, 24–25

**Secondary Sources**

FTC, *Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the Federal Trade Commission Act*, 2022 WL 16948770 (Nov. 10, 2022) ..................12–13

Lovett, *State Deceptive Trade Practice Litigation,* 46 Tulane L. Rev. 724 (1972) ................................................................................................12

Milner, *Defining Unfair Methods of Competition in the Federal Trade Commission Act*, 2023 Wis. L. Rev. 109 (2023)...................................................................................................12

**<u>DEFENDANT REVIVE RX, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Midway through the briefing, and especially during oral argument, on Revive's Motion to Dismiss Plaintiff's First Amended Complaint, it became clear that Lilly intends to pursue this case based on assumptions the law won't support. Lilly apparently believes that all it must prove to prevail here is that Revive dispenses "new drugs," and by "new drugs" Lilly means simply compounded medicines that *by design*—and as permitted by law—are "untested" and "unapproved" by the FDA. Doc. 97 ¶¶ 89, 98, 109, 120, 133, 142, 169. Worse still, Lilly's position is that Revive may escape liability for such sales only by proving that every dose of compounded medicine ever dispensed complies with every jot and tittle of every state and federal regulation. *See, e.g.,* Doc. 75 at 1–2; Doc. 97 ¶ 65. Revive therefore files this motion to obtain a ruling clarifying the law and who actually bears the burden of proof here. No state at issue has enacted or adopted Lilly's view of "new drugs" but has instead enacted separate chapters of code expressly permitting (and regulating) the sale of compounded medicines, including compounded GLP1s, within their borders and without any artificial cap on the volume of medicine that may be dispensed after receipt of a prescription (what Lilly calls "mass-manufacturing"). Indeed, the "new drug" laws Lilly cites do not even apply to compounded medicines. And even if they did, no state would apply those laws in the way Lilly urges (as giving Lilly a right to sue for any conceivable violation of any law or regulation in this area). Lilly's suit therefore has no basis in law and should be dismissed with prejudice because Lilly has pleaded no other basis for its claims.

**<u>NATURE AND STAGE OF THE PROCEEDINGS</u>**

After the Court granted in part and denied in part Revive's motion to dismiss, Doc. 92, Lilly filed its Second Amended Complaint, Doc. 97, which Revive answered while asserting several defenses, including exemptions under Alaska and North Carolina law. Doc. 99. Lilly then filed its Rule 7(a) Reply to Revive's Answer. Doc. 101. Revive now seeks judgment on the pleadings.

1

## STATEMENT OF THE ISSUES

1.    Whether each state's "new drug" laws even apply to compounded medicines and can thus give rise to unfair competition claims.

2.    Whether Lilly alleges the sort of statutory or regulatory violations that establish an "unfair method of competition."

3.    Whether Lilly's unfair competition claims under Connecticut and Washington law are barred under each state's ban on private enforcement of their respective Food Drug & Cosmetic Acts.

## STANDARD OF REVIEW

Rule 12(c) motions are evaluated by the same standard Rule 12(b)(6) motions. *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). "The central issue is whether, in the light most favorable to the plaintiff, the Complaint states a valid claim for relief." *Id.* (cleaned up). Construed as a whole and under correct principles, none of Lilly's state-law theories state valid claims for relief.

## STATEMENT OF RELEVANT FACTS

The Court's Order granting in part and denying in part Revive's motion to dismiss contains a lengthy recitation of the relevant facts as alleged in Lilly's First Amendment Complaint. Dkt. No. 92, at 3–10. The relevant facts remain largely unchanged in Lilly's Second Amended Complaint ("Complaint"). Lilly still alleges that Revive engages in unfair competition in violation of the laws of Alaska, Colorado, Connecticut, Hawaii, North Carolina, Tennessee, and Washington because it dispenses "unapproved compounded tirzepatide products." Doc. 97 ¶ 7.

## SUMMARY OF ARGUMENT

Lilly's state-law claims rest on an incomplete and fatally flawed understanding of state law—that the same states that enacted laws authorizing and inviting compounding pharmacies to dispense compounded medicines within their borders (including compounded GLP1s) simultaneously subjected those same pharmacies to crippling civil liability under a different and more general section of code barring sales of "new drugs." There are several reasons this basic assumption cannot ever give rise to a cause of action against a pharmacy like Revive.

2

First, each state's statutory scheme for pharmaceuticals makes clear that the state legislatures did not intend to require pharmacies to obtain premarket approval before dispensing compounded drugs pursuant to prescription orders, as Revive does. Otherwise, the practice of pharmacy compounding would effectively be illegal in each state. Lilly's basic theory—that the compounded medicines pharmacies dispense are banned "new drugs" until the pharmacies prove compliance with state or federal law—is wrong as a matter of law and is an improper attempt to foist the burden of proof onto Revive.

Second, the term "unfair methods of competition" that each state adopted in their laws (except Colorado and Hawaii) is a term of art that does not stretch as broadly as Lilly alleges. Not every statutory or regulatory violation constitutes an "unfair method of competition." And the only conduct Lilly targets in its Complaint is "new drug" sales. Lilly therefore hasn't shown that Revive engaged in "unfair methods of competition."

Third, Lilly has no claim under Connecticut or Washington law because both states enacted the same prohibition on private enforcement that federal law includes. *See* Conn. Gen. Stat. § 21a-99; Wash. Rev. Code § 69.04.180. And neither state has enacted anything suspending or granting any exceptions to that prohibition. Lilly is therefore barred from privately enforcing either statute, including through unfair competition claims.

## **ARGUMENT**

## I.    **LILLY FAILS TO ALLEGE A VIOLATION OF STATE NEW DRUG STATUTES AND THUS LACKS ANY UNFAIR COMPETITION CLAIMS**

Lilly's effort to abdicate its burden of proof and impose strict liability on Revive for dispensing "unapproved" and "untested" compounded medicines cannot withstand scrutiny for several reasons. *See* Doc. 97 ¶¶ 89, 98, 109, 120, 133, 142, 169 (alleging unfair competition under Alaska, Colorado, Connecticut, Hawaii, North Carolina, Tennessee, and Washington law because Revive dispenses compounded drugs without premarket approval). Start with the original public meaning of "new drug." Each state's use of "new drug" mirrors its original use under the federal FDCA. *See* 21 U.S.C. § 321(p). And for "roughly fifty years" after the federal FDCA's enactment

3

that compounded drugs were *not* "new drugs" subject to the federal FDCA's premarket-approval requirements. *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 389 (5th Cir. 2008). "Compounders, after all, do not make new drugs; they merely combine, mix, and alter the ingredients in old drugs." *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 330 (5th Cir. 2025) (cleaned up). Congress thus left regulation of compounding to the states, despite the FDCA's enactment, "and pharmacists continued to compound drugs without seeking FDA approval." *Med. Ctr. Pharmacy*, 536 F.3d at 389; *see also Zyla Life Scis.*, 134 F.4th at 330 ("Originally, the FDCA did not regulate all aspects of drug safety: As relevant here, it left alone the ancient art of compounding."). In other words, compounded medicines weren't "new drugs" under the FDCA's original public meaning. *See*, *e.g.*, *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 369–70 (2002); *Zyla Life Scis.*, 134 F.4th at 330.

That well-settled conclusion weighs heavy here. When each of the states at issue enacted their own FDCAs (referred to collectively as "state new drug statutes"), and imposed the same or similar premarket-approval restrictions on sales of "new drugs" within their borders,[1] they did so during that roughly fifty-year period when the public meaning of "new drugs" *excluded* pharmacy-compounded medicines.[2] Indeed, each of these new drug statutes either transplanted the same definition of "new drug" from the original FDCA or used that phrase in the same context.[3] And by transplanting the original public meaning of "new drug" during that roughly fifty-year period into their own laws, each state signaled that they meant to bring "the old soil" with it. *E.g.*, *Taggart v.*

---

[1] Alaska Stat. § 17.20.110(a); Colo. Rev. Stat. § 12-280-131(1); Conn. Gen. Stat. § 21a-110(a); Haw. Rev. Stat. § 328-17; N.C. Gen. Stat. § 106-135(a); Tenn. Code § 53-1-110(a); Wash. Rev. Code § 69.04.570.

[2] Alaska Stat. § 17.20.110(a) (enacted 1949); Colo. Rev. Stat. § 12-22-128 (enacted 1979), *reenacted and relocated* as *id*. § 12-280-131 (2012); Conn. Gen. Stat. § 21a-110(a) (enacted 1949 and amended 1963); Haw. Rev. Stat. § 328-17 (enacted 1941 and last amended 1972); N.C. Gen. Stat. § 106-135 (enacted 1939 and amended 1975); Tenn. Code § 53-1-110(a) (enacted 1941 and amended 1950, 1963, and 1986); Wash. Rev. Code 69.04.018 (enacted 1945); Wash. Rev. Code § 69.04.570 (enacted 1945 and amended 2012 and 2017).

[3] Alaska Stat. § 17.20.370(14); Tenn. Code § 53-1-102; Wash. Rev. Code § 69.04.018; *see also* Conn. Gen. Stat. § 21a-92(18) ("safe and effective for use"); N.C. Gen. Stat. § 106-121 (same). Although Colorado and Hawaii didn't define "new drug," their use of that term shows their legislatures intended the same meaning (as shown in this motion).

*Lorenzen*, 587 U.S. 554, 560 (2019) ("When a statutory term is obviously transplanted from another legal source, it brings the old soil with it.") (cleaned up). None of the states therefore intended their respective new drug statutes to do what Lilly contends—prohibit pharmacies from dispensing compounded medicines without premarket approval.

Congress' amendment of the FDCA in 1997, *see* 21 U.S.C § 353a (known also as "§ 503A"), neither requires nor warrants a different conclusion. Section 503A's enactment expanded the *federal* regulatory authority to reach compounded medicines for the first time in history, which expanded (by implication) the federal FDCA's definition of "new drug." *See Med. Ctr. Pharmacy*, 536 F.3d at 400–01; *see also Zyla Life Scis.*, 134 F.4th at 330. But Congress' expansion of federal authority means nothing for state enactments. The authority that the FDA once lacked over compounded medicines before § 503A's enactment, the states had already been exerting for decades (if not centuries). *See*, *e.g.*, *Zyla Life Scis.*, 134 F.4th at 330 (citing Judith E. Thompson, A Practical Guide to Contemporary Pharmacy Practice 141–42 (3d ed. 2009)). These states therefore didn't need to alter the meaning or scope of "new drug" to regulate compounded medicines; they had their own separate pharmacy laws to do that. So, while "new drug" may now encompass compounded medicines for purposes of *federal* regulation, the same doesn't hold true for the *state* new drug statutes.

That conclusion is borne out through application of several canons of construction. Consider first the canon that favors application of specific statutes over general ones, which each state applies.[4] Alaska, Colorado, Connecticut, Hawaii, North Carolina, Tennessee, and Washington *all* have laws specifically authorizing pharmacy compounding (referred to collectively as "state pharmacy laws"). In other words, these states all expressly permit the

---

[4] *Rivera v. Dep't of Admin., Div. of Motor Vehicles*, 564 P.3d 1040, 1048 (Alaska 2025); *Young v. Brighton Sch. Dist. 27J*, 325 P.3d 571, 577 (Colo. 2014); *FuelCell Energy, Inc. v. Town of Groton*, 323 A.3d 268, 274 (Conn. 2024); *Yoshimura v. Kaneshiro*, 481 P.3d 28, 46 (Haw. 2021); *Piedmont Pub. Co. v. City of Winston-Salem*, 434 S.E.2d 176, 177 (N.C. 1993); *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 66 (Tenn. 2023); *Ohio Sec. Ins. Co. v. Axis Ins. Co.*, 413 P.3d 1028, 1030 (Wash. 2018).

dispensing of medicines that necessarily lack premarket approval.[5] Under these laws, compounding, which includes the "preparation" or "mixing" of a "drug" as the result of a practitioner's "prescription,"[6] is the responsibility of licensed pharmacists. What none of these statutes include, however, is any numeric thresholds on the number of prescriptions a pharmacist or pharmacy may fill and that once exceeded suddenly transforms an otherwise permissible compounded medicine into a "new drug." And while Congress later amended the federal FDCA to extend to compounded medicines (subject exclusively to the FDA's enforcement) and to impose significant regulations on how compounded medicines are dispensed, *Med. Ctr. Pharmacy*, 536 F.3d at 389, none of these states amended their new drug statutes in similar fashion. They didn't need to; each state had already enacted separate chapters of code for that purpose. Put differently, these state new drug statutes still mirror the *original* FDCA, in pertinent part, as it existed during the fifty-year period when compounded medicines fell outside the FDCA's ambit. The specific-over-the-general canon therefore counsels strongly against extending any state new drug statutes, and their premarket-approval requirements, to compounded drugs, as Lilly urges. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 139 (2000) ("Congress' decisions to regulate labeling and advertising and to adopt the express policy of protecting 'commerce and the national economy . . . to the maximum extent' reveal its intent that tobacco products remain on the market.").

---

[5] *See, e.g.,* Alaska Stat. §§ 08.80.003 *et seq.* (Alaska Pharmacy Practice Act); Colo. Rev. Stat. §§ 12-280-101 *et seq.* (Colorado Pharmacy and Pharmaceutical Law); Conn. Get. Stat. §§ 20-570 (Connecticut Pharmacy Practice Act); Haw. Rev. Stat. §§ 461-1 *et seq.* (Hawaii Pharmacists and Pharmacy Law); N.C. Gen. Stat. §§ 90-85.2 *et seq.* (North Carolina Pharmacy Practice Act); Tenn. Code §§ 63-10-201 *et seq.* (Tennessee Pharmacy Practice Act); Wash. Rev. Code §§ 18.64.001 (Washington Pharmacy Act).

[6] Alaska Stat. § 08.80.480(4); Colo. Rev. Stat. § 12-280-103(10); Conn. Gen. Stat. § 20-571(10); Tenn. Code § 63-10-204(6); Wash. Rev. Code § 18.64.011(6). North Carolina more generally defines "compounding" to mean "taking two or more ingredients and combining them into a dosage form of a drug, exclusive of compounding by a drug manufacturer, distributor, or packer." N.C. Gen. Stat. § 90-85.3(c). Hawaii does not define the term. The laws of both states make clear that compounding is an activity undertaken by licensed pharmacists based on a practitioner's prescription. *See, e.g.*, Haw. Rev. Stat. § 461-9(a); N.C. Gen. Stat. § 90-85.3A.

Consider next the "*in pari materia*" canon, which requires courts to harmonize overlapping state laws, and which each state applies when construing their own statutes.[7] Under this canon, courts consider the structure of separate provisions and construe them in harmony to ensure no provision is nullified. *See supra* n.7. Here, the state new drug statutes and the state pharmacy statutes share overlapping definitions and include important distinctions that should be construed to promote consistency with the state pharmacy statutes, and that, properly understood, further prove why Lilly's theory is unsupportable. To accept Lilly's view of the state new drug statutes, the Court has to conclude that the same states that enacted laws permitting the dispensing of compounded medicines without premarket approval somehow intended also to make such medicines presumptively unlawful (as "new drugs") *and* to then expose each pharmacy that dispensed such medicines to the immediate risk of being sued for unfair competition where, according to Lilly, the only burden will be to prove the pharmacy sold the compounded medicines state laws allow, and where the burden of proof will be foisted on the pharmacy to prove a negative (that they didn't violate the law when dispensing such medicines). *See*, *e.g.*, Doc. 97 ¶¶ 89, 98, 109, 120, 133, 142, 169. The *in pari materia* canon provides another reason that cannot be the law.

The canon that presumes legislatures do not engage in futility and enact statutes with full knowledge of existing law—whether statutes, court decisions, or the common law—also prevents Lilly's view from becoming law, whether under state new drug laws or through state unfair competition laws.[8] Because these states enacted state pharmacy laws with full knowledge of their state new drug laws, they could not have meant to engage in futility, and thus could never have intended their new drug laws to apply as Lilly urges—as presumptively banning what state

---

[7] *Underwater Const., Inc. v. Shirley*, 884 P.2d 150, 155 (Alaska 1994); *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 (Colo. 1991); *Gilmore v. Pawn King, Inc.*, 98 A.3d 808, 820 (Conn. 2014); *Morita v. Gorak*, 453 P.3d 205, 219 (Haw. 2019); *DTH Media Corp. v. Folt*, 841 S.E.2d 251, 257 (N.C. 2020); *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023); *Hallauer v. Spectrum Props., Inc.*, 18 P.3d 540, 550 (Wash. 2001).

[8] *E.g.*, *Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 9 (Alaska 2014); *Robbins v. People*, 107 P.3d 384, 389 (Colo. 2005); *City Council of City of W. Haven v. Hall*, 429 A.2d 481, 485–86 (Conn. 1980); *State v. Reis*, 165 P.3d 980, 998 (Haw. 2007); *Ridge Cmty. Inv'rs, Inc. v. Berry*, 239 S.E.2d 566, 570 (N.C. 1977); *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995); *Maziar v. Washington State Dep't of Corr.*, 349 P.3d 826, 828 (Wash. 2015).

7

pharmacy laws expressly permit. And there is even less reason to believe that when state legislatures enacted those state pharmacy laws they also thought they were providing drug manufacturers like Lilly a means to sue pharmacies for dispensing new drugs and then foisting the burden of proof on those pharmacies to prove compliance at the risk of being held strictly liable for all such sales. *E.g.,* Doc. 97 ¶ 65 ("Nor can Revive defend its conduct by claiming that its sale of unapproved compounded tirzepatide is authorized by Section 503A of the FDCA."). Every state's legislature knew when they enacted these laws—whether state new drug laws, state pharmacy laws, or unfair competition laws—that *plaintiffs* bear the burden of proving their claims and are forbidden from burdening defendants with proving a negative (i.e., they didn't violate the law).[9] Lilly's view would upend that well-established backdrop against which these states acted, which is yet another reason to reject it.

Consider finally the interpretive principle that "has come to be known as the 'elephant-in-mousehole doctrine,'" *Med. Ctr. Pharmacy*, 536 F.3d at 396, which states also apply.[10] Under that principle, courts reject attempts like Lilly's to read broad and ambiguous statutory provisions in ways that produce massive expansions of regulatory power or ban broad swaths of private conduct, unless the statute's text clearly expresses such an intent. *See supra* n.10; *see also Brown & Williamson Tobacco*, 529 U.S. at 140–43 (rejecting even in the *Chevron* era the FDA's assertion that Congress gave FDA regulatory authority over tobacco products based solely on the FDCA's broad and ambiguous definition of "drugs"). Here, neither law nor logic supports the view that

---

[9] *E.g.*, *Nordin Const. Co. v. City of Nome*, 489 P.2d 455, 464–65 (Alaska 1971) (party seeking relief bears the burden of proof); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1057 (Colo. 1992) ("The burden of proving a prima facie case for recovery on a civil claim is on the plaintiff."); *Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2d Cir. 1963) ("[I]n Connecticut, as everywhere, . . . in a civil action, the general burden of proof is on the plaintiff."); *Nw. Mut. Ins. Co. v. Hylton*, 172 S.E.2d 226, 227 (N.C. 1970) ("It is well settled in this jurisdiction that a plaintiff has the burden of proof on all allegations, negative as well as affirmative, which are essential to his claim or cause of action."); *Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 783 (Tenn. 2000) (same); *State v. Anderson*, 863 P.2d 1370, 1374 (Wash. 1993) (same).

[10] *Accord Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 303 (Alaska 2014) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)); *Educ. ReEnvisioned BOCES v. Colorado Springs Sch. Dist. 11*, 524 P.3d 324, 328 (Colo. App. 2022); *Morita*, 453 P.3d at 219; *Falls*, 673 S.W.3d at 180.

states that expressly permit pharmacies to dispense compounded medicines without premarket approval under their pharmacy laws silently banned that same conduct in another section of code without any reference back to those pharmacy laws (as the FDCA now does in relation to § 503A). *Cf.* 21 U.S.C § 353a ("Sections 351(a)(2)(B), 352(f)(1), and 355 of this title shall not apply to a drug product if . . . ."). In short, nothing suggests that any state legislature intended to hide the elephant of premarket approval for compounded medicines in the mousehole of new drug statutes and with crippling exposure to civil suits to boot. *See Med. Ctr. Pharmacy*, 536 F.3d at 399–400. Lilly's basic premise—that compounded drugs are "new drugs" that require premarket approval under state law the violation of which gives rise to unfair competition claims the pharmacy bears the burden of disproving—is therefore wrong as a matter of law. *See* Doc. 97 ¶¶ 65, 89, 98, 109, 120, 133, 142, 169. The Court should therefore dismiss not only every claim in Lilly's Complaint that hinges on Lilly's incorrect view about the scope and meaning of "new drugs" but this entire action. Once those claims are dismissed, there is nothing left of Lilly's Complaint.

None of the other aspects of Revive's alleged conduct that Lilly mentions in its Complaint are actionable. For example, although Lilly complains about "mass-manufacture" or "mass-production" of medicines by compounding pharmacies (Doc. 97 ¶¶ 7, 9, 65), Lilly has cited no state laws (whether in its Complaint or prior briefing) that create some threshold number of prescriptions that, once exceeded, suddenly converts compounded medicines into "new drugs." Indeed, the concept of "mass-manufacturing" is irrelevant to those statutes. Selling a single dose of a "new drug" violates state new drug laws; the magnitude of the violation is irrelevant. *See supra* n.2. Lilly's "mass-manufacture" allegations are rhetoric rather than facts germane to any pleaded state-law unfair competition claims.[11]

---

[11] Section 503A also lacks any *numeric* thresholds that would make medicine dispensed under that law a "new drug" under the federal FDCA. *E.g.*, 21 U.S.C § 353a(a). And while § 503A does require some nexus between the amount of medicine compounded and the number of prescriptions received or anticipated (known as "anticipatory compounding"), *id.* § 353a(b), that nexus has no bearing on state-law claims. None of the states at issue have adopted § 503A as their own and Lilly can't enforce § 503A privately.

Indeed, if anything, the state new drug laws' definition of "manufacture" or similar words (e.g., "manufacturing") only further proves why compounded medicines sit outside the scope of such statutes. Colorado's new drug statute, for example, defines "manufacture" to *exclude* "compounding and dispensing of a prescription drug pursuant to a prescription order." Colo. Rev. Stat. § 12-280-103(26), (53).[12] Connecticut defines "manufacturer" to include compounding only when sterile compounded drugs are provided "*without a prescription* or a patient-specific medial order." Conn. Gen. Stat. § 21a-70(a)(2) (emphasis added).[13] North Carolina excludes compounding from its definition of "manufacturer" by limiting that term to "producers of prescription drugs," which expressly excludes pharmacists "acting in the course of their professional practice as defined in Chapter 90." N.C. Gen. Stat. § 106-140.1(j). And "Chapter 90" defines and governs the "practice of pharmacy" and expressly permits pharmacists "to interpret and evaluate drug orders, including prescription orders[.]" *Id*. § 90-85.3A. In other words, pharmacists who dispense compounded medicines after receipt of a prescription are acting in the course of the professional practice of pharmacy under Section 90-85-3A, and are therefore excluded from the definition of "manufacturer" under North Carolina's new drug statutes. *Id*.

---

[12] "Compounding" also includes "anticipatory compounding." Colo. Rev. Stat. § 12-280-103(10); 3 CCR 719-1-21.00.30(f).

[13] In that limited circumstance where "a sterile compounding pharmacy provides sterile pharmaceuticals without a patient-specific prescription or medical order, the sterile compounding pharmacy shall also obtain a certificate of registration from the Department of Consumer Protection pursuant to section 21a-70 and any required federal license or registration." *Id.* § 20-633b(d)(2). Otherwise, Connecticut permits sterile compounding pharmacies to "provide patient-specific sterile pharmaceuticals to patients, to practitioners of medicine, osteopathy, podiatry, dentistry or veterinary medicine, or to an acute care or long-term care hospital or health care facility licensed by the Department of Public Health." *Id.* § 20-633b(d)(1). Section 21a-70 (regarding registration of manufacturers) and section 20-633b (regarding sterile compounding pharmacies) therefore make dispensing after receipt of a prescription order the critical factor to exclude a compounding pharmacy from the definition of a manufacturer under the new drug statute.

10

§ 106-140.1(j). And Tennessee[14] and Washington[15] law are even more straightforward on this score. It would therefore be anomalous to interpret the state new drug statutes as Lilly does and effectively prohibit a practice that these states expressly authorize in their pharmacy statutes and, in some cases, explicitly excluded from coverage under the new drug statutes Lilly invokes, whether as new drugs or as "manufacturers."

Perhaps that's why Lilly makes a passing reference to § 503A in its Complaint—to fill holes (ostensibly) in the pleaded facts. *See* Doc. 97 ¶ 65. But Lilly's mere mention of § 503A cannot save Lilly's state-law unfair competition claims from dismissal. Section 503A is instead a red herring.

Lilly lacks any right to sue under § 503A (or any other section of the FDCA). *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). And while private litigants may sue (in the Fifth Circuit) to enforce "parallel" state statutes that "mirror[] federal requirements," *Zyla*, 134 F.4th at 337–38, no state's new drug statutes contain provisions paralleling § 503A for Lilly to enforce in the name of "unfair competition." What is more, even when citing § 503A, Lilly merely parrots the statute's words rather than pleading *facts* that show Revive violates that section under each state's law. Under the familiar *Iqbal* standard, Lilly's bare incantation of § 503A's text

---

[14] *See* Tenn. Code § 63-10-204(6), (24) (defining "manufacturer" as "any person, *except a pharmacist compounding in the normal course of professional practice*, engaged in the commercial production, preparation, propagation, conversion or processing of a drug, either directly or indirectly, by extraction from substances of natural origin or independently by means of chemical synthesis, or both, and includes any packaging or repackaging of a drug or the labeling or relabeling of its container and the promotion and marketing of such drugs or devices" (emphasis added)). Tennessee then further defines the practice of pharmacy to include both compounding and anticipatory compounding. *Id.* § 63-10-204(6).
[15] Washington too excludes "the activities of a licensed pharmacy that compounds a product on or in anticipation of an order of a licensed practitioner for use in the course of their professional practice to administer to patients, either personally or under their direct supervision," from its definition of "manufacture." Wash. Rev. Code § 18.64.011(24)(a).

falls well short of stating a plausible claim for relief under *state law*. Lilly's claims and action should therefore be dismissed.

## II.　EVEN IF LILLY HAD ALLEGED A VIOLATION OF THE STATE NEW DRUG STATUTES, IT WOULD NOT CONSTITUTE "UNFAIR COMPETITION"

Even if Lilly could plead a violation of state new drug statutes, it wouldn't help Lilly based on the way Lilly has framed its claims in its Complaint. Violations of state new drug laws do not constitute an "unfair method of competition" under the pertinent state statutes.

In regulating and imposing civil liability for "unfair methods of competition," each state's statute (except Colorado's) expressly relies on the meaning and application of that identical phrase from the Federal Trade Commission Act ("FTCA")—the act that originated that same term.[16] And under the FTCA, "unfair methods of competition" has historically referred to methods of competition that violate the letter or spirit of the antitrust laws or common-law causes of action for unfair competition. *See* Milner, *Defining Unfair Methods of Competition in the Federal Trade Commission Act*, 2023 Wis. L. Rev. 109, 139–54 (2023); *see also* Lovett, *State Deceptive Trade Practice Litigation,* 46 Tulane L. Rev. 724, 732 (1972) (explaining that the phrase "unfair methods of competition" in state "little FTC Acts" was understood to "achieve[] antitrust as well as deceptive objections" and thus reach "trade restraints which tend to create monopoly and enhance prices" (quoting Council of State Governments, 1970 Suggested State Legislation 142). That historical understanding mirrors the FTC's 2022 policy statement regarding unfair methods of competition, which is viewed as the *broadest* possible interpretation of the phrase. *See* FTC, *Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the Federal Trade Commission Act*, 2022 WL 16948770 (Nov. 10, 2022). The policy statement identifies

---

[16] *See* Alaska Stat. § 45.50.545 ("In interpreting AS 45.50.471 due consideration and great weight should be given the interpretations of 15 U.S.C. 45(a)(1)."); Conn. Gen. Stat. § 42-110b(b) (similar); Haw. Rev. Stat. § 480-2(b) (similar); Tenn. Code § 47-18-115 (similar); Wash. Rev. Code § 19.86.920 (similar); *Marshall v. Miller*, 276 S.E.2d 397, 399 (N.C.1981) ("It is established by earlier decisions of this Court that federal decisions interpreting the FTCA may be used as guidance in determining the scope and meaning of G.S. 75-1.1."). As discussed below, the Colorado Consumer Protection Act does not prohibit unfair methods of competition or unfair acts or practices and thus FTCA precedent is less relevant for that state.

numerous illustrative examples of conduct that might constitute an "unfair method of competition," all of which raise anticompetitive concerns. *Id.* at *6–7. The 2022 statement also makes clear that "*violations of generally applicable laws by themselves, such as environmental or tax laws, that merely give an actor a cost advantage would be unlikely to constitute a method of competition.*" *Id.* at *4 (emphasis added). In short, Lilly's view—that the violation of every jot and tittle of any statute or regulation constitutes an "unfair method of competition"—is meritless. Indeed, that view finds no support in the laws of any state at issue.

### A.    Alaska

Although Alaska's Unfair Trade Practices Act ("UTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce," Alaska Stat. § 45.50.471(a), Lilly's Complaint does not plausibly show that Revive has engaged in either of the "unfair methods" Alaska generally recognizes. *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 591 (Alaska 2012) (recognizing two forms of unfair methods of competition: (1) a "per se violation" of a specific guideline within the Act; or (2) an "unfair" act based on "the flexible and somewhat vague *Sperry & Hutchinson* standards" (cleaned up)).

On that first category, Alaska's UTPA lists *57* statutes the violation of which constitutes a "per se" method of unfair competition (or an unfair or deceptive act or practice). Alaska Stat. § 45.50.471(b). Yet conspicuously absent from that extensive list is any mention of Alaska's new drug statute. And that glaring omission has weighty consequences under two additional canons of construction. The first is that, like most states, Alaska courts presume that when a legislature omits words from a statute, that omission is intentional such that the courts will not add words the legislature refused to include. *E.g.*, *State v. Fyfe*, 370 P.3d 1092, 1100 (Alaska 2016). As such, Alaska's *omitted* new drug statute cannot be considered a per se unfair method of competition.

A second canon, the related "expressio unis" canon, yields the same conclusion. *E.g.*, *Ranney v. Whitewater Eng'g*, 122 P.3d 214, 218 (Alaska 2005). Alaska applies that canon when, as here, "a statute expressly enumerates the things or persons to which it applies," and thus creates an "inference that, where certain things are designated in a statute, all omissions should be

13

understood as exclusions." *Id.* at 218. And that inference is especially forceful here given all the *other* provisions of Alaska's FDCA its legislature did include as per se violations of its UTPA. *See id.* § 45.50.471(47)–(48) (providing that violations of §§ 17.06.010 and 17.20 are actionable under the UTPA). The legislature's purposeful inclusion of certain FDCA violations as per se methods of unfair competition means the legislature purposefully *excluded* Alaska's new drug statute from per se consideration.[17]

Nor does the alleged conduct constitute an unfair method of competition under the *Sperry & Hutchinson* factors. Those standards provide that "[u]nfairness will be determined by a variety of factors, including: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (Alaska 1980) (quotation marks omitted). Significantly, these factors focus on whether the alleged conduct is "within at least the penumbra of some common-law, statutory, or other established *concept of unfairness*." *Id.* (emphasis added). In other words, not *every* violation of law is "unfair." And the only "unfair practice" Lilly identifies in its Complaint is Revive's "selling unapproved drugs in Alaska," which isn't itself actionable under Alaska's UTPA. Doc. 97 ¶ 90.

Any claims Lilly raised (or believes it raised) under Alaska law in its Rule 7(a) Reply (Doc. 101) fair no better. Most of them are merely repackaged versions of its meritless arguments about compounded medicines being "new drugs" and thus fail for all the reasons the claims in the Complaint also fail. *See* Doc. 101 ¶¶ 4–9, 13–15, 26–34. And Lilly pleads nothing in its Rule 7(a)

---

[17] Moreover, the overwhelming majority of Alaska's per se violations involve deceptive conduct, which is not implicated by section 17.20.110(a), further suggesting that a violation of the section is not an unfair method of competition. *See Fairbanks Gold Mining, Inc. v. Fairbanks N. Star Borough Assessor*, 488 P.3d 959, 966 (Alaska 2021) ("Pursuant to the doctrine of *ejusdem generis*, a general term, when followed by specific terms, will be interpreted in light of the characteristics of the specific terms, absent clear indication to the contrary.").

Reply about the robust enforcement actions otherwise shown in Revive's answer, Doc. 99 ¶ 185, which means Revive's conduct remains exempt. *See*, *e.g.*, *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025). Lilly pivoted instead to allegations about purported "per se" violations. Once the Complaint is dismissed, however, Lilly's defensive assertions about purported per se conduct are irrelevant. A reply to an answer merely responds to defensive matters raised in an answer and is not an independent pleading that sets forth claims for relief. *E.g.*, *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (holding that because Rule 7(a) replies do not state claims for relief, they are not subject to Rule 8's "short and plain" statement requirement). As a result, the Rule 7(a) reply has no independent significance once the Complaint is dismissed and thus cannot prevent dismissal of Lilly's claims under Alaska law.

## B.    Colorado

Colorado's Consumer Protection Act ("CCPA") is unique. Unlike the other statutes, the CCPA only prohibits "deceptive trade practice[s]." Colo. Rev. Stat. § 6-1-105; *see In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 779 F. Supp. 3d 624, 658 (M.D.N.C. 2025) ("The CCPA enumerates an extensive set of 'deceptive acts,' none of which expressly proscribes anticompetitive conduct without reference to deception."); *In re HIV Antitrust Litig.*, No. 19-CV-02573-EMC, 2023 WL 3006572, at *2 (N.D. Cal. Apr. 18, 2023) (same) (collecting cases). Lilly alleges Revive violated the CCPA per se by refusing or failing "to obtain all governmental licenses or permits required to perform the services or to sell the goods, food, services, or property as agreed to or contracted for with a consumer." Doc. 97 ¶ 97 (cleaned up). But that allegation cannot give rise to a CCPA claim against Revive for at least two reasons.

First, although the CCPA lists three specific provisions of Colorado's Pharmacy and Pharmaceuticals Law the violation of which constitutes a per se "deceptive" trade practice, Colorado's premarket-approval requirement is *not* among them. *See* Colo. Rev. Stat. § 6-1-105(zzz) & (ffff). Colorado applies the same canons of construction as Alaska. *E.g.*, *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001) (en banc) (*expressio unius est exclusio alterius*). Colorado's similar omission of its new drug statute therefore yields similar results—no CCPA claim for Lilly.

15

Second, Lilly pleads no facts showing that Revive has failed to obtain a "license" or "permit" under Colorado law. Lilly can't plead that Revive has dispensed compounded medicines in Colorado without a valid *pharmacy* license because the Court may take judicial notice of Revive's Colorado license to dispense compounded medicines under Colorado law. *See* Doc. 70-1 at 8. That is why Lilly limited its CCPA claim to violations of Colorado's new drug statute instead. What Lilly hasn't shown, however, is that Colorado even requires a "license" or "permit" to sell "new drugs"—another fatal omission in its CCPA claim.

Colorado courts have rejected claims under section 6-1-105(z) where there is a dispute over whether the defendant was required to obtain the alleged license or permit. In *Mangone v. U-Haul International, Inc.*, 7 P.3d 189 (Colo. App. 1999), the plaintiff sued U-Haul under this provision for "selling collision damage waivers without an insurance license." *Id.* at 191. The Colorado Court of Appeals rejected the claim, explaining that "the Consumer Protection Act does not provide notice of any requirement to obtain a license to sell collision damage waivers." *Id.* at 191. "[B]ecause no statute or appellate decision has defined 'insurance' to include collision damage waivers, and … the issue of whether a collision damage waiver is insurance has not been resolved, [the court] conclude[d] that the trial court correctly held that plaintiff could not recover on his claim that the defendants violated the licensing requirement." *Id.* In other words, to state a claim under section 6-1-105(z), the defendant must have violated an *unambiguous* licensing or permitting requirement. The section cannot be deployed by plaintiffs seeking to test the boundaries of underling licensing or permitting requirements—neither of which is actually implicated here— in hopes of collecting treble damages.

As shown above, Revive wasn't required to obtain premarket approval for its compounded tirzepatide. And any doubt on that score is no basis for a section 6-1-105(z) claim under *Mangone*.

## C.    Connecticut

The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Like Alaska, Connecticut recognizes

"per se" violations or violations proven under the *Sperry & Hutchinson* factors discussed above. *E.g.*, *McLaughlin Ford, Inc. v. Ford Motor Co.*, 473 A.2d 1185, 1191 (Conn. 1984). Lilly has no claim under this framework.

First, Lilly cannot show that violations of Connecticut's new drug statute (Conn. Gen. Stat. § 21a-110(a)) constitute a per se violation because Connecticut's legislature hasn't deemed such violations as such in any statute or regulation. *See Jacobs v. Healey Ford-Subaru, Inc.*, 652 A.2d 496, 506 (Conn. 1995) ("When the legislature has intended to make the violation of a consumer statute an automatic violation of CUTPA, it has done so expressly."). That conclusion is especially warranted under CUTPA. "[T]he history of the [federal] FTC Act is the lodestar for determining the scope of CUTPA." *Connelly v. Hous. Auth. of City of New Haven*, 567 A.2d 1212, 1217 (Conn. 1990). And Revive has found no instances where the FTC declared violations of new drug statutes an "unfair method of competition" under the FTCA. *See id.* (holding that breakdown of heat or hot water delivery systems wasn't a per se CUTPA violation because no instance could be found in which the FTC Act has been applied to any such conduct).

Second, Revive's alleged violation of Connecticut's new drug statute also fails to qualify as an "unfair method of competition" under the *Sperry & Hutchinson* factors. As to the "substantial injury" prong of the *Sperry & Hutchinson* factors, Connecticut has adopted the "substantial injury" test under the FTCA, drawn from 15 U.S.C. § 45(n), which requires Lilly to satisfy three tests: "It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." *Id.* at 1192 (quotation marks omitted). The Connecticut Supreme Court explained that this test "strikes the proper balance between the public need for vigorous competition, and the countervailing demand that the method of competition be fair." *Id.*; *see also Bristol Tech., Inc. v. Microsoft Corp.*, 42 F. Supp. 2d 153, 175 (D. Conn. 1998) (applying "substantial injury" test). But Lilly's Complaint fails to allege any injury to consumers that is "substantial" and not "outweighed by any countervailing benefits to consumers or competition." *McLaughlin Ford*, 473 A.2d at 1192. On the contrary, if Lilly prevails on its "new drug" theory,

17

consumers and competition will be harmed: pharmacies will be prohibited from dispensing compounded alternatives ("new drugs") that Connecticut law otherwise permits Revive to dispense based on a prescription from a doctor licensed in Connecticut who has determined the compounded alternative is better for the patient, leaving Connecticut prescribers and patients with only one source for tirzepatide drugs—Lilly. Moreover, any purported "injury" is not one that "consumers themselves could not reasonably have avoided." *Id*. There is no showing in Lilly's complaint that Revive deceives or coerces consumers into purchasing compounded tirzepatide their physicians prescribe. And if a prescriber determines Lilly's FDA-approved tirzepatide product meets the patient's medical needs, Revive's alleged conduct does not prevent them from prescribing Lilly's product.[18]

**D.     Hawaii**

Although the Court already dismissed Lilly's claim under Hawaii law for failing to satisfy Hawaii's "nature of the competition" requirement under Hawaii Revised Statute § 480-2 (which Lilly then amended), Doc. 92 at 25 (discussing *Gurrobat v. HTH Corp.*, 323 P.3d 792, 811 (Haw. 2014)), the Court should dismiss that claim again because Lilly hasn't sufficiently shown an "unfair method of competition" within that statute's meaning, which is a separate element. Chapter 480 of Hawaii's Revised Statutes governs monopolies and restraint of trade, it also provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Haw. Rev. Stat. § 480-2.

---

[18] At best, the Complaint alleges that Revive, like other compounding pharmacies, has adopted "aggressive" or "hard-nosed" business tactics, which simply do not equate to an unfair method of competition. *Landmark Inv. Grp., LLC v. Calco Const. & Dev. Co.*, 60 A.3d 983, 992 (Conn. 2013); *see also Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 103 (2d Cir. 2019) (citing *Landmark* for the proposition that "Connecticut law is clear that widespread business practices that are consistent with 'common business norms' do not violate CUTPA."). Consistent with that view, courts have rejected the proposition that asserted statutory violations constitute unfair methods of competition where "the line between business tactics … that were unfair and those that, if hard-nosed, were nonetheless legitimate was blurry." *Sporty's Farm LLC v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 501 (2d Cir. 2000) (rejecting argument that violation of federal cybersquatting statute constituted unfair competition); *Prime Publishers, Inc. v. Am.-Republican, Inc.*, 160 F. Supp. 2d 266, 284 (D. Conn. 2001) (same).

18

*Gurrobat* did not address whether the alleged statutory violation at issue constituted an "unfair method of competition." It did not need to; the alleged violation constituted a per se unfair method of competition. *Id.* at 812 ("[P]ursuant to HRS § 481B–4, a violation of HRS § 481B–14 'shall be deemed' both an UMOC and an unfair or deceptive act or practice in the conduct of any trade or commerce."). Lilly has no such argument here, however, because, unlike the statute at issue in *Gurrobat*, Hawaii's legislature hasn't declared violation of Hawaii's new drug statute (Haw. Rev. Stat. § 328-17) an unfair method of competition.

Moreover, the Hawaii Supreme Court has rejected Lilly's view that any alleged statutory violation constitutes an unfair method of competition. *See, e.g.*, *Hawaii Cmty. Fed. Credit Union v. Keka*, 11 P.3d 1, 17 n.15 (Haw. 2000) (violation of Truth in Lending Act did not violate Haw. Rev. Stat. § 480-2 because "although the ultimate objective of both statutes is consumer protection, they effect their common purpose by non-coextensive means"); *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 691 n.28 (D. Haw. 2017) (violation of Real Estate Settlement Procedures Act did not violate Haw. Rev. Stat. § 480-2). As in *Keka* and *Heejoon*, a violation of Haw. Rev. Stat. § 328-17 is not "coextensive" with Haw. Rev. Stat. § 480-2 and thus is not an unfair method of competition. In fact, Revive's conduct enhances competition by providing consumers with more options for tirzepatide (once a physician has determined that is what the patient needs). *Cf. WHIC LLC v. NextGen Lab'ys, Inc.*, No. CV 18-00261, 2019 WL 2717769, at *4 (D. Haw. June 28, 2019) ("[T]he SAC does not allege that Aloha Toxicology's actions have restrained competition by disrupting "price setting, resource allocation, market entry, or output designation" in the toxicology market"). Accordingly, Revive's alleged violation of Haw. Rev. Stat. § 328-17 does not constitute an "unfair method of competition" within the meaning of Hawaii law. And since Lilly hasn't alleged any other "unfair method of competition," Lilly has no claim under Hawaii law.

### E.     North Carolina

The North Carolina Supreme Court has made clear that NC UDTPA "is not intended to apply to all wrongs in a business setting." *HAJMM Co. v. House of Raeford Farms, Inc.*, 403

19

S.E.2d 483, 492 (N.C. 1991). "To prevail on an [NC] UDTPA claim, plaintiffs must demonstrate 'some type of *egregious* or *aggravating* circumstances.'" *Curtis B. Pearson Music Co. v. Everitt*, 368 F. App'x 450, 455–56 (4th Cir. 2010); *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (same). "[T]o read the statute to create *per se* liability for violations of federal law would expand its scope beyond the apparent intent of the North Carolina legislature." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 805 (4th Cir. 2001); *see id.* (violations of federal trademark and copyright law were not "unfair methods of competition"). When considering whether statutory violations are "unfair methods of competition," North Carolina courts consider "whether the statute at issue defined in detail unfair methods of business and unfair and deceptive acts or practices in the industry, thereby establishing the legislative intent to equate a violation of that statute with the more general provision of § 75-1.1." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 586 (E.D.N.C. 2020) (cleaned up); *see also id.* (alleged violations of HIPAA and related laws weren't "unfair methods of competition"); *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016) (same as to North Carolina Uniform Athlete Agents Act); *Legacy Data Access, LLC v. MediQuant, Inc.*, 2017 WL 6001637, at *16 (W.D.N.C. Dec. 4, 2017) (same as to North Carolina Trade Secrets Protection Act); *White v. Chase Bank USA, N.A.*, No. 5:16-CV-00176-BR, 2017 WL 1131898, at *6 (E.D.N.C. Mar. 24, 2017) (same as to Fair Credit Billing Act and Electronic Funds Transfer Act); *Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 380 (E.D.N.C. 1993) (same as to Beer Franchise Law); *Noble v. Hooters of Greenville (NC), LLC*, 681 S.E.2d 448, 453 (N.C. App. 2009) (same as to Chapter 18B of the North Carolina General Statutes); *Odell v. Legal Bucks, LLC*, 665 S.E.2d 767, 780 (N.C. App. 2008) (same as to N.C. Gen. Stat. § 24-1.1). Here, N.C. Gen. Stat. § 106-135(a) does not "define[] in detail unfair methods of business" thereby "establishing the legislative intent to equate a violation of that statute" with a violation of the UDTPA. *Cross*, 438 F. Supp. at 586. Lilly hasn't shown Revive has any "power or position," much less power or position that it could "inequitabl[y] assert[]." *Johnson*, 300 N.C. at 264. And Lilly's Complaint lacks any qualifying "*egregious* or

20

*aggravating* circumstances[.]" *Curtis B. Pearson Music*, 368 F. App'x at 455–56. Lilly therefore lacks a NC UDTPA claim under § 106-135(a).

Furthermore, the North Carolina Supreme Court has made clear that the historical absence of FTCA application to a particular transaction type is a strong indication that the NC UDTPA should not apply to that transaction. *See HAJMM Co.*, 403 S.E.2d at 492. In *HAJMM Co.*, for example, the lack of the FTCA's application to securities justified excluding such transactions from the NC UDTPA, as did the existence of a comprehensive regulatory scheme for securities. 403 S.E.2d at 492. Likewise, the FTCA has not historically been applied to the conduct Lilly alleges here; and the regulatory scheme applied to compounded medicine is just as comprehensive as for securities (if not more so). The Court should therefore dismiss this claim.

## F.      Tennessee

Although Lilly alleges that Revive engages in "unfair or deceptive acts or practices affecting the conduct of any trade or commerce" under the Tennessee Consumer Protection Act ("TCPA"), Doc. 97 ¶ 143, Lilly hasn't shown any such acts or practices.[19] Acts or practices are unfair under Tennessee law "where 'the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *Morrison v. Allen*, 338 S.W.3d 417, 439 (Tenn. 2011). Such injury to consumers is not reasonably avoidable "when a merchant's sales practices unreasonably create or take advantage of an obstacle to the free exercise of consumer decision-making." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 117 (Tenn. Ct. App. 2005). And practices "that unreasonably interfere with consumer decision-making include (1) withholding important information from consumers, (2) overt coercion, or (3) exercising undue influence over a highly susceptible class of consumers." *Id*. All that Lilly alleges,

---

[19] The TCPA does *not* prohibit "unfair methods of competition." *See Bennett v. Visa USA Inc.*, 198 S.W.3d 747, 754 (Tenn. Ct. App. 2006). "While many states' little FTC acts prohibited both unfair methods of competition and unfair or deceptive acts or practices, the statutes of other states, including Tennessee's, prohibit only the second category of conduct-unfair or deceptive acts or practices. The foregoing demonstrates that the TCPA does not apply to anti-competitive conduct." *Id.* at 755 (quotation marks omitted).

21

however, is that Revive dispenses "unapproved combination tirzepatide and vitamin B6 injections in Tennessee without obtaining the requisite approvals to sell new drug products, in violation of Tennessee law." Doc. 97 ¶ 144. But Tennessee's legislature hasn't made such conduct a per se violation (because the TCPA doesn't define new drug sales as a deceptive act or practice). *See, e.g.*, *Westgate Resorts, Ltd. v. Wesley Fin. Group, LLC*, 2023 WL 5062065, at *19 & n.14 (M.D. Tenn. Aug. 8, 2023). And Lilly has pleaded no facts showing that Revive has unreasonably interfered with consumer decision making within the meaning of Tennessee law.

Lilly tries to mask this flaw by alleging that Revive is "advertising, promoting, selling, or offering for sale any good or service that is illegal or unlawful to sell in the state." Doc. 97 ¶ 143 (quoting Tenn. Code § 47-18-104(b)(43)(C)). But that claim can't withstand scrutiny. Lilly's Complaint concedes that tirzepatide and compounding services are lawful, including in Tennessee. *See, e.g.,* Doc. 97 ¶ 7. And despite what Lilly alleges, the fact that compounded tirzepatide is subject to state and federal statutes and regulations doesn't make compounded tirzepatide "illegal or unlawful" for sale in the relevant sense. Rather, goods or services qualify as "illegal or unlawful" only when banned categorically. *See, e.g.*, *Westgate Resorts*, 2023 WL 5062065, at *14–*15 (construing Subsection (b)(43)(C)).

In *Westgate*, for example, a timeshare company accused a financial services company of violating Subsection (b)(43)(C) by "providing unauthorized legal services or engaging in the unauthorized practice of law," and causing "owners to believe [falsely] that they have a legal basis for cancelling their timeshare contracts," among other things. *Id.* at *14. Although the court granted *the plaintiff's* summary judgment motion on several aspects of its claims for various deceptive acts, *id*. at *17–*19, it rejected the timeshare company's claim under subsection (b)(43)(C) as "a kind of semantic contortion" of that provision. *Id*. *15. That provision spoke to the kind of categorical bans shown in Subparts (A) and (B), which alluded to Tennessee's categorical ban on certain devices (radar jammers),[20] and thus made actionable sales of both the

---

[20] Radar detectors and radar jamming devices. *Id*. § 39-16-610.

banned devices and services related to such devices (e.g., offering to pay for traffic citations issued despite use of banned devices). 2023 WL 5062065, at *15; *see also Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005) ("[W]here general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." (cleaned up)). But whatever the financial services company had done (which apparently included the unauthorized practice of law), it hadn't engaged in conduct that violated subsection (b)(43)(C). *Id*. The same is true here. Lilly's Complaint alleges nothing that subsection (b)(43)(C) covers.

### G.   Washington

The Washington Consumer Protection Act ("WCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020. Like other states, Washington also divides WCPA claims between per se and other kinds of violations. Lilly has shown none in its Complaint.

Despite what Lilly alleges, "not every violation of a statute results in a per se consumer protection action." *State v. Schwab*, 693 P.2d 108, 112 (Wash. 1985) (quotation marks omitted). Only Washington's legislature may declare "a statutory violation to be a per se unfair trade practice." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 536 (Wash. 1986); *accord Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 626–27 (W.D. Wash. 2006). And Washington's legislature has not declared violations of its new drug statute (Wash. Rev. Code § 69.04.570) a per se violation. Quite the contrary. Although Washington's legislature explicitly deemed certain violations of Washington's FDCA per se WCPA violations,[21] new drug statute violations weren't among them. Accordingly, as with other states, violations of Washington's new drug statute aren't actionable under the WCPA. *See In re Det. of Williams*, 55 P.3d 597, 604 (Wash. 2002) (*expressio unius est exclusio alterius*).

---

[21] *See* Wash. Rev. Code § 69.50.455; Wash. Rev. Code § 69.50.460.

Neither has Lilly shown that Revive's alleged conduct (dispensing compounded tirzepatide, Doc. 97 ¶ 170) is an "unfair method of competition" under the WCPA. Consistent with the historical understanding of the term, the Washington Supreme Court has explained that "unfair methods of competition" encompass "conduct which violates the letter of either the Sherman or Clayton Antitrust laws," "threatens an *incipient* violation of one of the antitrust laws," and "violates the *spirit* of the antitrust laws." *State v. Black*, 676 P.2d 963, 968 (Wash. 1984). Here, Lilly has said *nothing* about Revive's conduct being "anticompetitive" (because it isn't) or violating any antitrust laws. Lilly therefore has no claim under the WCPA. Indeed, that conclusion is especially warranted here since the WCPA doesn't "prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest," Wash. Rev. Code § 19.86.920, and thus "warrants a narrower interpretation of the words 'unfair method of competition' than that given by federal courts," *Black*, 676 P.2d at 969, which hasn't historically included "new drug" sales Lilly complains about in its WCPA claim.

## III.     CONNECTICUT'S AND WASHINGTON'S FDCA-STYLE EXCLUSIVITY PROVISIONS BAR LILLY'S CONNECTICUT AND WASHINGTON CLAIMS

At the very least, Lilly's Connecticut and Washington claims should be dismissed in light of provisions in their state FDCA statutes explicitly barring private enforcement. Lilly previously acknowledged that the federal FDCA's specification that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States," 21 U.S.C. § 337(a), constitutes an "exclusivity" provision precluding private enforcement. Dkt. No. 75 at 19–20. This provision "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance." *Buckman*, 531 U.S. at 349 n.4.

The Connecticut and Washington new drug statutes contain identical exclusivity provisions precluding private enforcement. *See* Conn. Gen. Stat. § 21a-99 ("All such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the state of Connecticut."); Wash. Rev. Code 69.04.180 ("All such proceedings for the enforcement, or to

restrain violations, of this chapter shall be by and in the name of the state of Washington."). These statutes also must be construed consistently with the federal FDCA. *See* Conn. Get. Stat. § 21a-120; Wash. Rev. Code 69.04.001. Accordingly, Lilly's Connecticut and Washington claims must be dismissed based on these exclusivity provisions because Lilly has no private right of enforcement.

## CONCLUSION

WHEREFORE, Revive respectfully prays that this Honorable Court grant its Motion for Judgment and dismiss Lilly's claims as outlined above.

25

**Dated:** <u>April 10, 2026</u>          Respectfully submitted,


By: <u>*/s/ Joshua J. Bennett*</u>
Lisa A. Houssiere
Texas Bar No. 24056950
Federal Bar No. 904591
Email: lhoussiere@bakerlaw.com
Nikki L. Morris
Texas Bar No. 24098143
Federal Bar No. 3257781
Email: nmorris@bakerlaw.com
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: (713) 751-1600
Facsimile: (713) 751-1717

Joshua J. Bennett
Texas Bar No. 24059444
Email: jbennett@bakerlaw.com
**BAKER & HOSTETLER LLP**
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201
Telephone: (214) 210-1200
Facsimile: (214) 210-1201

Thomas E. Hogan (*pro hac vice*)
Email: thogan@bakerlaw.com
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue, NW Ste. 1100
Washington, D.C. 20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783

**ATTORNEYS FOR DEFENDANT**

26